IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNION PROPERTIES LLC, § | | |
| Relator, § | | |
| § | | |
| v. § | Civil Action No. A-11-CA-54 | |
| § | | |
| GIBSON GOOD TOOLS, INC., § | JURY TRIAL DEMANDED | |
| Defendant. § | | |

## RELATOR'S ORIGINAL COMPLAINT FOR FALSE PATENT MARKING

### A. Parties

1.  Relator, Union Properties LLC ("Union Properties"), is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business in Austin, Texas.

2.  Defendant, Gibson Good Tools, Inc. ("Gibson"), is a corporation organized and existing under the laws of the State of Virginia, with its registered place of business at 402 Fifth Street, Grottoes, Virginia 24441. Defendant may be served with process through its registered agent, Leigh Crumrine, 402 Fifth Street, Grottoes, Virginia 24441.

### B. Jurisdiction

3.  This Court has jurisdiction over the lawsuit because the action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.  This Court has general and specific personal jurisdiction over Defendant by virtue of, *inter alia*, Defendant's persistent and continuous contacts with this District, including: (1) active and regular conduct of business during the relevant time period in this District; (2) deriving substantial revenue from goods and/or services provided to individuals and other

entities in Texas and in this District; and/or (3) offering for sale and selling falsely-marked products in this District.

### C.  Venue

5.      Venue is proper in this District under 28 U.S.C. §§ 1391(b), 1391(c), and 1395(a).

### D.  Facts

6.      This is an action for false patent marking under 35 U.S.C. § 292, which provides that any person may sue to recover the civil penalty for false patent marking.  Relator brings this *qui tam* action on behalf of the United States of America.

**False Marking by Defendant Gibson**

7.      Defendant Gibson has made, used, sold, and/or offered for sale in the United States and/or imported into the United States Gripper Clips, including by way of example only, Part Nos. 225-P, 225-S, 225-FS, 225-L, 225-HL, 225-FL, 225-XL, 225-HXL, 225-FXL, 250-K, and 250-N, and Packaged Gripper Clips, including by way of example only, Catalog Nos. 4L, 5S, 1FL, 36L, 36S, 36XL, and 36A.

8.      Upon information and belief, Defendant Gibson marks and/or has marked, affixes and/or has affixed, and/or uses and/or has used in advertising in connection with their Gripper Clips, including by way of example only, Part Nos. 225-S, 225-FS, 225-L, 225-HL, 225-FL, 225-XL, 225-HXL, 225-FXL, and 250-N, and Packaged Gripper Clips, including by way of example only, Catalog Nos. 4L, 5S, 1FL, 36L, 36S, 36XL, and 36A (collectively the "Falsely-Marked Products") an expired patent—U.S. Patent No. 1,711,730 ("the '730 Patent").

9.      As illustrated in Exhibit 1, Defendant Gibson marked Part No. 225-S with the '730 Patent.

10.     As illustrated in Exhibit 2, Defendant Gibson marked Part No. 225-L with the '730 Patent.

11. A true and correct copy of U.S. Patent No. 1,711,730 ("the '730 Patent") is attached as Exhibit 3.

12. The '730 Patent, entitled "Spring Clip," was filed on November 9, 1927, and issued on May 7, 1929.

13. The '730 Patent expired on or about May 7, 1946, pursuant to 35 U.S.C. § 154(c).

14. Defendant Gibson falsely marked the Falsely-Marked Products after the expiration of the '730 Patent.

15. Defendant Gibson and its predecessors are sophisticated organizations that have been manufacturing, distributing, and exporting various products, including but not limited to Gripper Clips (tool clips, tool holders, broom clips, spring clips, clips, spring steel clips, coated clips, vinyl coated clips, and utility tool clips) throughout the world, including this District, since approximately 1945.  (Ex. 4, GIBSON GOOD TOOLS, http://www.gibsongoodtools.com/index.htm, page1.htm–page7.htm (last visited Jan. 18, 2011); (Ex. 5, GIBSON GOOD TOOLS, INC., http://www.thomasnet.com/profile.html?cov=NA&which=comp&what=gibson+good+tools&searchpos=1&cid=368313 (last visited Jan. 18, 2011).  Gibson's Gripper Clips are designed to hold round objects ranging from 3/8" to 2-1/2" in diameter, including by way of example only, tools, brooms, mops, rakes, shovels, sporting goods, and flashlights, to flat surfaces.  (*See* Exs. 4 & 5.)  Gibson's Gripper Clips have a myriad of applications in homes, storage sheds, garages, recreational vehicles, businesses, government facilities, hospitals, commercial office buildings, and industrial facilities.  (*See* Exs. 4 & 5.)  Gibson actively markets the Falsely-Marked Product in this District at Dooley's 5-10 & 25 Store, Inc., 131 E. Main St., Fredericksburg, Texas 78624, where the Falsely-Marked Products can be purchased by the general public.  Gibson has many

3

years of intellectual property experience, and Gibson's intellectual property is a valuable asset to Gibson.

16. Defendant knew that expired patents do not covered any product.

17. Defendant knew that the '730 Patent was expired. Moreover, given the filing and issue dates of the '730 Patent, Defendant did not have a reasonable belief that the '730 Patent was unexpired.

18. Defendant knew that the expired '730 Patent did not cover any of the Falsely-Marked Products.

19. The Falsely-Marked Products could have easily been made without falsely marking them with the '730 Patent.

20. Defendant knew that it was a false statement to mark the Falsely-Marked Products with an expired or otherwise inapplicable patent.

21. Defendant did not have, and could not have had, a reasonable belief that the Falsely-Marked Products were properly marked.

22. Defendant marked the Falsely-Marked Products for the purpose for deceiving the public into believing that the products were patented and to thwart competition.

**Injury to the United States of America**

23. Defendant's practice of false marking is injurious to the United States.

24. Defendant's false marking alleged in the preceding paragraphs caused injury to the sovereignty of the United States arising from violations of federal law, specifically, the violation of 35 U.S.C. § 292. The United States has conferred standing on "any person," including the Relator, as the United States' assignee of the claims in the Complaint to enforce 35 U.S.C. § 292.

25. Defendant's false marking alleged in the preceding paragraphs caused proprietary injury to the United States, which, together with 35 U.S.C. § 292, would provide another basis to confer standing on Relator as the United States' assignee.

26. The marking and false marking statutes exist to provide the public notice of patent rights. Congress intended the public to rely upon marking as a ready means of discerning the status of intellectual property embodied in an article of manufacture or design, such as in Defendant's Falsely-Marked Products.

27. Federal patent policy recognizes an important public interest in permitting full and free competition in the use of ideas that are, in reality, a part of the public domain, such as those disclosed in the '730 Patent.

28. The public's interest in preventing false marking was so great that the United States enacted a statute that sought to encourage private parties to enforce the statute. By permitting members of the public to bring *qui tam* suits on behalf of the government, Congress authorized private persons, such as Relator, to help control false marking.

29. Defendant's false marking alleged in the preceding paragraphs deter innovation and stifle competition in the marketplace for at least the following reasons: (1) if an article that is within the public domain is falsely marked, potential competitors may be dissuaded from entering the same market; (2) false marks may deter scientific research when an inventor sees a mark and decides to forego continued research to avoid possible infringement; and (3) false marking can cause unnecessary investment in design around or costs incurred to analyze the validity or enforceability of a patent whose number has been marked upon a product with which a competitor would like to compete.

30.     Defendant's false marking alleged in the preceding paragraphs misleads the public into believing that the '730 Patent gives Defendant control of Defendant's Falsely-Marked Products (as well as similar products), which places the risk of determining whether Defendant's Falsely-Marked Products and similar products are controlled by the '730 Patent on the public, thereby increasing the cost to the public of determining who, if anyone, in fact controls the intellectual property embodied in Defendant's Falsely-Marked Products.

31.     Thus, in each instance where a representation is made that Defendant's Falsely-Marked Products are protected by the '730 Patent, a member of the public desiring to participate in the market for products similar to Defendant's Falsely-Marked Products must incur the cost of determining whether the involved patents are valid and enforceable. Failure to take on the costs of a reasonably competent search for information necessary to interpret each patent, investigation into prior art and other information bearing on the quality of the patents, and analysis thereof can result in a finding of willful infringement, which may treble the damages an infringer would otherwise be required to pay.

32.     Defendant's false marking alleged in the preceding paragraphs also creates a misleading impression that Defendant's Falsely-Marked Products are technologically superior to previously available products, as articles bearing the term "patent" may be presumed to be novel, useful, and innovative.

33.     Every person or company in the United States is a potential entrepreneur regarding the apparatus described in the '730 Patent. Moreover, every person or company in the United States is a potential competitor with respect to Defendant's Falsely-Marked Products that are marked with the '730 Patent.

34. Each of Defendant's Falsely-Marked Products, is likely to, or at least has the potential to, discourage or deter each person or company, which view such marking from commercializing a competing product, even though the '730 Patent is expired and inapplicable.

35. Defendant's false marking alleged in the preceding paragraphs has quelled competition regarding similar products to an immeasurable extent, thus, causing harm to the United States in an amount that cannot be determined readily.

36. Defendant's false marking alleged in the preceding paragraphs constitutes wrongful and illegal advertisement of a patent monopoly that does not exist and, as a result, has resulted in increasing, or at least maintaining, the market power or commercial success of Defendant's Falsely-Marked Products.

37. Each individual false marking is likely to harm, or at least potentially harm, the public. Thus, each such false marking is a separate offense under 35 U.S.C. § 292(b).

38. For at least the reasons stated in the preceding paragraphs, Defendant's false marking caused injuries to the United States arising from violations of federal law and has caused proprietary injuries to the United States.

### E. Count 1 – False Marking

39. Relator incorporates all of the preceding paragraphs as if fully set herein. Defendant has violated 35 U.S.C. § 292 by falsely marking the Falsely-Marked Products for the purpose for deceiving the public.

### F. Jury Demand

40. Relator asserts its rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## G. Prayer

41. For these reasons, Relator requests a judgment against Defendant for the following:

> a. A judgment in favor of Relator that Defendant has violated 35 U.S.C. § 292 by falsely marking products with knowledge that the patents have expired or are otherwise inapplicable for the purpose of deceiving the public;
>
> b. An accounting of total unit sales, per unit sales price, per unit revenue, gross revenue, per unit profit, and gross profit for any falsely-marked articles;
>
> c. A monetary award pursuant to 35 U.S.C. § 292 in the form of a civil fine of $500 per falsely-marked article, or an alternative reasonable amount determined by the Court taking into consideration the sales, price, the total revenue and gross profit derived from the sale of falsely-marked articles and the degree of intent to falsely mark the articles, one-half of which shall be paid to the United States and the other half to the Relator;
>
> d. A judgment declaring that this case is "exceptional" under 35 U.S.C. § 285; and awarding Relator its costs, including reasonable attorney's fees, in bringing and maintaining this lawsuit;
>
> e. An injunction ordering Defendant, and its officers, agents, servants, employees, attorneys, licenses, successors, and assigns and those in active concert or participation with any of them, to cease all existing acts of false marking within 90 days and from committing any new acts of false marking;

f.  An award of pre-judgment and post-judgment interest on any monetary award;

g.  Costs of court;

h.  All other relief, at law and in equity, which this Court deems appropriate.

Respectfully submitted,

/s/ James N. Willi
James N. Willi
Texas Bar No. 00795719
jwilli@willilawfirm.com
Tracy J. Willi
Texas Bar No. 00784633
twilli@willilawfirm.com
Willi Law Firm, P.C.
9600 Escarpment Blvd.
Ste. 745, PMB 34
Austin, TX 78749-1983
Tel. (512) 288-3200
Fax (512) 288-3202

ATTORNEYS FOR RELATOR,
UNION PROPERTIES LLC